GARRISON et al. v. BOWMAN et al.
(No. 905.)

(Court of Civil Appeals of Texas. Amarillo.
Jan. 19, 1916. Rehearing Denied
Feb. 23, 1916.)

1. JOINT ADVENTURES ⊂∞1—RESCISSION OF
CONTRACT — MISREPRESENTATIONS AS TO
PRICE.

Where one person represents to another
with whom he is in a confidential relation that
he has a contract entitling him to purchase
land at a certain price, and agrees that the
other may have a half interest in the land by
paying one-half of such price, his misstatement
of the price constitutes fraud, entitling the oth-
er to rescind their agreement.

[Ed. Note.—For other cases, see Joint Adven-
tures, Cent. Dig. § 1; Dec. Dig. ⊂∞1.]

2. ACTION ⊂∞50—JOINDER OF CAUSES OF AC-
TION—PARTIES INVOLVED.

In order to avoid multiplicity of suits, a
suit in trespass to try title to land conveyed by
two of the plaintiffs to a third under a war-
ranty deed, and to cancel conveyances between
defendants and notes given plaintiffs by one
defendant, was properly brought by such plain-
tiffs against such defendant, who was alleged to
have induced plaintiffs, by fraudulent represen-
tations as to price, to join with him in purchas-
ing a half interest in the land, and against a
person to whom this defendant had conveyed his
interest.

[Ed. Note.—For other cases, see Action, Cent.
Dig. §§ 511–547; Dec. Dig. ⊂∞50.]

3. JOINT ADVENTURES ⊂∞4—FRAUD—WAIVER.

Where purchasers with knowledge of false
representations made to them as to the cost
price of the land by one who thereby induced
them to join with him in buying same, the
entire tract being deeded to them pursuant to
their contract with him, paid off the purchase-
money notes and sold the land to a third per-
son, they affirmed the contract in toto and waiv-
ed their right to a rescission and cancellation
of the contract so as to deprive their joint pur-
chaser of his rights under it; their remedy in
such case being by a suit for damages.

[Ed. Note.—For other cases, see Joint Adven-
tures, Cent. Dig. §§ 3–6; Dec. Dig. ⊂∞4.]

4. JOINT ADVENTURES ⊂∞5 — PURCHASE OF
LAND—MISREPRESENTATIONS AS TO PRICE—
MEASURE OF DAMAGES.

Where purchasers of a half interest in land
are induced to buy, through misrepresentations
of the purchaser of the other half interest as to
the purchase price, the measure of damages re-
coverable by them from such other purchaser
is the difference between the actual purchase
price of the half interest and the amount which
they have actually paid.

[Ed. Note.—For other cases, see Joint Ad-
ventures, Cent. Dig. § 7; Dec. Dig. ⊂∞5.]

5. JOINT ADVENTURES ⊂∞4 — CONTRACT BE-
TWEEN JOINT PURCHASERS—CONSTRUCTION—
CONVERSION OF COLLATERAL.

That the purchaser of a half interest in
land had agreed with the purchasers of the oth-
er interest to whom the entire tract was deeded
that in case he failed to sell the land within a
certain time he would relinquish all claim to it
did not entitle the other purchasers to retain
and convert to their own use notes which he had
pledged with them as collateral security.

[Ed. Note.—For other cases, see Joint Adven-
tures, Cent. Dig. §§ 3–6; Dec. Dig. ⊂∞4.]

Appeal from District Court, Deaf Smith
County; D. B. Hill, Judge.

Action by J. H. Bowman and others against
J. H. Garrison and others. From a judg-
ment for plaintiffs, defendants appeal. Re-
versed and remanded.

Turner & Rollins, of Amarillo, for appel-
lants. B. Frank Buie, of Canyon, for appel-
lees.

HALL, J. Defendants in error, John H.
Bowman, C. P. Bowman, and Albert O. Swin-
son, filed this suit against W. L. Garrison
and J. H. Garrison, and by their first amend-
ed original petition sought a recovery in the
first count of three sections of land describ-
ed therein, in trespass to try title.

In the second count it is alleged that the
said Swinson is the legal and equitable own-
er of the land, having obtained the same
through warranty deeds from J. H. and C.
P. Bowman; that J. H. and C. P. Bowman
acquired said sections from L. A. Pierce, by
conveyance dated February 14, 1910; that
the consideration mentioned in each deed to
each section is $8,000, $2,666.67 cash, and
four vendor's lien notes. Two of said notes
for $2,133.33 each, due on or before one and
two years after date and two vendor's lien
notes for $533.33 each, due on or before one
and two years after date, bearing 10 per
cent. interest from date, and providing for
10 per cent. attorney's fees; that each of
said notes are executed by J. H. and C. P.
Bowman, payable to the order of L. A.
Pierce, and retain a vendor's lien to secure
their payment; that J. H. and C. P. Bow-
man, on March 21, 1913, paid off the prin-
cipal and interest of said notes, and obtained
from L. A. Pierce the release of the vendor's
lien on said land. It is further alleged that
a few weeks prior to taking over said three
tracts of land, by the said Bowmans, J. H.
Garrison came to Staunton, Va., where said
Bowmans resided, and stated and represent-
ed to J. H. Bowman and C. P. Bowman that
he had an option contract with said Pierce,
whereby the said Garrison could purchase
said lands for the sum of $24,000, one-third
cash, the balance on or before one and two
years, with 6 per cent. interest; that he, the
said Garrison, had paid the said Pierce on
said option contract the sum of $3,000; that
he was not able to get up the other $5,000,
and in the event he should fail to do so he
would lose the $3,000 already put up on said
land, and that the time of the option had
almost expired. He further represented to
the said Bowmans that the land was very
fine, two of the sections being smooth, level
sections and the other one a creek section,
containing fine alfalfa land; that the $24,-
000 was actual cost of said land; and that
there were no commissions or profits to any-
one. The said Garrison further stated that
if the said Bowmans would put up $4,000
and loan him, the said Garrison, $1,000, he
would take them into the deal at just what
he was paying Pierce for the land, and

that if they would go in with him he would have the land deeded directly to them for their protection, they to give the vendor's lien notes to Pierce, and that he would give them his two notes, in the sum of $4,000 each, to protect them in one-half of the deferred payments; and one note for $1,000 for the cash loaned him to make the first payment; that the said Garrison agreed to sell the land within a very short time, viz., three or four months, and that they would divide the profits above the actual cost price equally; that is, one half to Garrison and the other half to the said Bowmans. It is further alleged that neither of the said Bowmans had ever been in Texas and knew nothing whatever about the character and value of said lands; that they had been friends of Garrison in Virginia in their boyhood days; and that Garrison had been in Randall county, Tex., for many years, and knew the character, quality, and value of the three sections. They further allege that they relied upon his statements, paid the $5,000 cash, executed the vendor's lien notes to Pierce and received the deeds to said land; that the said Garrison had not put up the $3,000 as stated by him; that at the time Garrison obtained the option contract for Pierce to purchase said land, he caused Pierce to sign two option contracts, one showing that Garrison was to pay $24,000 for the land, and the other showing the purchase price to be $19,200, which last price was the true consideration to be paid Pierce; that about two years after they executed said notes to Pierce and paid the $5,000 cash and received the deeds to said land they came to Texas to inspect the same, and learned from L. A. Pierce that he had received only $10 per acre, and not $12.50 per acre, as stated in the option contract, which Garrison had presented to them; that on February 8, 1910, the said Garrison made a contract with them, which was reduced to writing in part; that the contract as written showed the cost of said land to Pierce to be $12.50 per acre, one-third cash, balance in one and two years at 6 per cent. interest. It further recited that the Bowmans were to pay to Pierce $5,000 of the cash payment, and that Garrison was to pay $3,000 of the cash payment; that it failed to show who were to make the two deferred payments of $8,000 each to Pierce, and it is alleged that the deferred payments were to be made one half by Garrison and the other half by Bowmans; that subsequent thereto, J. H. Garrison had transferred the three tracts of land to his son, W. L. Garrison; that by reason of the fraudulent acts and representations of Garrison, he had forfeited all rights and equities in said land. In this pleading the plaintiffs tendered the two notes for $4,000 each, and the one note for $1,000, executed by Garrison to them, into court, for cancellation. They prayed that the sale from J. H. Garri-

son to his son, W. L. Garrison, be canceled; that the three notes tendered into court be also canceled and for costs of suit.

On June 1, 1914, the defendants J. H. and W. L. Garrison filed their original answer, and in addition to general and special exceptions pleaded not guilty to the first count of the petition, which was in the form of trespass to try title. In answer to the second count, they denied that J. H. Garrison made any fraudulent representations as to the price paid by him for the land, and that nothing had been omitted from the contract by mistake or fraud. It is further specially alleged that Garrison never at any time offered to take J. H. and C. P. Bowman as partners in any transaction, and that in the purchase of said land they relied upon information received from their uncle, James F. Bowman, who resided in Texas, and had seen the land in question, and was well informed as to its value.

By way of cross-action, J. H. Garrison alleged that about the 8th day of February, 1910, he was in Staunton, Va., and while there met J. H. and C. P. Bowman; that they were anxious to purchase lands in Texas, and he stated to them that he had three sections which he had contracted to purchase, and in which he would sell them a half interest at $12.50 per acre; that at the time the market value of the said land was $12.50 per acre, and they were so informed by their uncle, James F. Bowman; that a written contract was entered into between them, whereby they agreed to purchase a half interest in said three sections at said price; that after the land had been conveyed to them, the said J. H. and C. P. Bowman, in disregard of the rights of the said Garrison, conveyed said land to the said Albert O. Swinson, at a consideration which he believed to be $25 per acre; that about the 29th day of November, 1911, he transferred to J. H. and C. P. Bowman two certain vendor's lien notes, in the sum of $1,526.33 each, executed by E. J. Clemmer, and payable to C. R. McAfee, and bearing 8 per cent. interest per annum, and which were secured by lien on the south half of a certain section of land in Randall county, Tex.; that said notes were transferred at the request of the said J. H. and C. P. Bowman, for the purpose of giving to them additional security for money paid and to be paid out by them on the land in controversy, under a contract dated February 8, 1910; that it was not the intention of the parties that the said Bowmans should become the owners of the Clemmer notes, but that they should hold the same as security for the amounts paid out by them in carrying out the contract of purchase of the said three sections; that about the 27th day of April, 1912, the said Bowmans caused such half section of land to be conveyed to C. P. Bowman and S. T. Clemmer, in consideration of $10 and the assump-

tion of an indebtedness against said half section, and they converted said notes to their own use and benefit, making the amount which J. H. Garrison had paid on said land $7,029.50, with interest; that by reason of the breach of the contract of February 8, 1910, and the sale of said land and the conversion of the two notes held by them as collateral security, the said Garrison is entitled to a lien on the three sections of land to secure the payment of the amount due him; that the said Swinson took the title to said land, with full knowledge of the rights of the said Garrison therein; that the said Bowmans are estopped to set up the matters set out in the second count of their petition, because of the fact that soon after the making of the contract of February 8, 1910, they were in Texas and became fully informed with reference to the things set up in said petition, and after learning from Pierce the market value of said land, they ratified and confirmed the contract and transaction in all things, and made no demand for the cancellation thereof, until about three years thereafter; that before the Bowmans conveyed the said land to Swinson, the said J. H. Garrison, for a valuable consideration, conveyed his interest in said three sections to W. L. Garrison, and that such conveyance was immediately recorded.

On June 1, 1914, plaintiffs filed their first supplemental petition, in which, among other things, it is alleged that, when the Bowmans came to Texas, in November, 1911, and told Garrison that he had misrepresented to them the cost price of said land, and demanded of him that he make good the difference, it was agreed between them that Garrison should make good the $1,800 excess in cash and vendor's lien notes that they had been out on the purchase of said land; that in order to secure the Bowmans in said amount, and other moneys that they had been or might be out on said land, Garrison agreed to put up as additional security for his half interest, two notes for $1,526.33 each, executed by E. J. Clemmer, and described in defendant's pleadings; that it was further agreed that the said Garrison should have two years more in which to sell said land at any price over and above the first cost thereof, profits to be equally divided; and that if such sale was not made within two years, the said Garrison would surrender any and all claims he might have to said land, to the said Bowmans.

Defendants in error allege that they are ready, able, and willing to transfer to the said Garrison by general warranty deed an undivided half interest in said three sections of land, provided he will pay them in cash one-half of the first cost of said land to Pierce, viz., $9,600, plus the $1,800 excess taken by the defendant J. H. Garrison, with 6 per cent. interest from February 14, 1910, to November 29, 1911, and at said date allow J. H. Garrison a credit for said two notes of $1,526.33 each, with 8 per cent. from their date to November 29, 1911. It is admitted that on or about November 29th Garrison turned over to them, as collateral security, the two Clemmer notes, but they allege that they were a second lien on the half section of land for which they were given; that they were forced to pay off the prior lien in order to protect said notes; that the prior lien was to secure $1,666.67, with 8 per cent. interest thereon for several years; that in order to protect the two Clemmer notes, they were compelled to buy said land and pay off said first lien.

Other pleadings were filed, the substance of which it is not necessary to be stated here.

On a trial before the court it was decreed that Swinson recover the title and possession of the three sections of land; that J. H. and W. L. Garrison take nothing by reason of their cross-action on the two Clemmer notes; that J. H. and C. P. Bowman take nothing as against Garrison, either on the $1,000 note or the two notes for $4,000 each. The judgment further decreed the cancellation of the contract dated February 8, 1910, and also the deed from J. H. to W. L. Garrison. The said contract of February 8, 1910, made an exhibit to plaintiff's pleadings, stipulates that J. H. and C. P. Bowman have taken over the contract made between Pierce and Garrison, for the three sections of land, at the price of $12.50 per acre; one-third of the purchase price to be paid in cash and the balance in one and two years, respectively, with 6 per cent. interest. Said sections of land to be deeded to J. H. and C. P. Bowman. It is recited that J. H. Garrison has a half interest in said land; that J. H. Bowman has a fourth, and C. P. Bowman a fourth, interest; that the selling price of said land should be agreed upon by all of the three interested parties. It is further stipulated that the Bowmans are to pay to Pierce in cash $5,000; that Garrison is to pay $3,000, and agrees to pay over to the Bowmans $1,000 with 6 per cent. interest, making them equal in the cash payment of $8,000; that said money was to be paid to the Bowmans out of the first cash received on a sale of any part of the land described.

[1] It is insisted under the first and third assignments of error that, even though the representations made by Garrison as to the cost of the property were fraudulent, it is not actionable unless the petition also alleged that the property was not worth the sum of $12.50 per acre. We do not so understand the law. There seems to be some conflict in the authorities upon this question, but by the weight of authority, where the vendor misrepresents the cost of the land to him and the purchase price in a sale by him is measured by the cost price, it constitutes actionable fraud. Kohl v. Taylor, 35 L. R. A. (N. S.) 177, note 3, and authorities there

cited. The rule is announced in this note, page 185, that when representations as to the cost of property are made by a person purchasing jointly for himself and another, or by a person turning property already acquired over to an association, of which he is a member, such representations are statements of fact, which may be properly relied upon, and, if false, will support an action for fraud. It is alleged and shown in this record that a confidential relationship existed between the Bowmans and Garrison, and under the allegations the general demurrer to the second count should not have been sustained.

[2] By their second assignment of error, appellants insist that the court erred in overruling their exception, on the ground that the plaintiff's pleadings showed a misjoinder of parties and causes of action. We believe the court was correct in overruling the exception. There was such a relationship existing between the various transactions involved in this suit and the rights of the parties were so interwoven that they should have been settled in the same action. Before Swinson could recover it was necessary that the deed from J. H. to W. L. Garrison be set aside, and that the rights of J. H. Garrison in the land, as fixed by the contract of February 8, 1910, should be determined. The Bowmans having executed a warranty deed to Swinson, were interested in the controversy between Swinson and Garrison, to the end that the title which they had warranted might be made clear. The matters might have been settled in two separate actions, but it has always been the policy of Texas courts to avoid a multiplicity of suits.

[3, 4] The fourth assignment of error must be sustained. The defendants in error pleaded that they were induced to purchase the land by reason of the false representations made to them by J. H. Garrison as to its cost. The record shows that after they had acquired knowledge of the fraud which had been perpetrated upon them, they paid off the remaining notes, and afterwards sold the land to Swinson, thus affirming the contract in toto. Plaintiffs in error excepted to the whole of the second count of the amended petition, because it appeared that defendants had affirmed the contract with knowledge of the fraud. Under these conditions they could not rescind the contract and have it canceled, depriving Garrison of his rights thereunder. Their remedy was a suit for damages. Grabenheimer v. Blum, 63 Tex. 369. According to the rule announced in Hall v. Grayson County National Bank, 36 Tex. Civ. App. 317, 81 S. W. 762, the Bowmans were entitled to the benefit of the contract they had made with Garrison. According to this contract, they were entitled to a half interest in the three sections of land, at the price of $10 per acre, but by reason of the fraud of Garrison they were forced to pay $12.50 per acre. Under the rule announced in the last-named case, the measure of their damages should be the difference between the price which Pierce had agreed to sell the land to Garrison for—that is $10—and the amount which the Bowmans actually paid for the land.

[5] For the reasons stated, we think the court erred in canceling the contract of February 8, 1910, as between the Bowmans and Garrison. In our opinion the court also erred in decreeing that J. H. Garrison should recover nothing against the plaintiffs by reason of their conversion of the E. J. Clemmer notes. It seems to be conceded that these notes were placed in the hands of J. H. and C. P. Bowman as collateral security, and while the Bowmans testified that Garrison agreed to relinquish all claims to the land, provided he did not succeed in selling the three sections within two years from the date of the agreement, no one contends that he was to surrender the Clemmer notes. In the adjustment of the equities between the parties, the Bowmans should account to Garrison for the amount of said notes.

For the errors pointed out, the judgment is reversed, and the cause remanded.

---

⬦⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes .
*Application for writ of error pending in Supreme Court.