

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-15-00340-CV

RICK LOVELADY CARPETS, INC., APPELLANT

V.

G.R. CHAPMAN LIMITED PARTNERSHIP AND GEORGE R.
CHAPMAN A/K/A G.R. CHAPMAN, APPELLEES

On Appeal from the 251st District Court
Potter County, Texas
Trial Court No. 101,442-C, Honorable Ana Estevez, Presiding

October 17, 2017

## MEMORANDUM OPINION ON REHEARING

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.[1]

Appellee G.R. Chapman Limited Partnership and George R. Chapman a/k/a G.R. Chapman has filed a motion for rehearing of our opinion and judgment issued April 26, 2017, and at our request appellant Rick Lovelady Carpets, Inc. ("RLCI") filed a response. We overrule Chapman's motion for rehearing. We withdraw our April 26

---

[1] Justice Mackey K. Hancock, retired, not participating.

opinion and judgment, and substitute the following opinion and corresponding judgment in their place.

RLCI brought suit against Chapman, alleging a false representation of material fact by Chapman caused RLCI injury under various tort and contract theories.[2] Chapman sought and obtained summary judgment against RLCI on the entire case. Finding on this record the case was not capable of disposition by summary judgment, we will reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

## Background

The summary judgment record presents starkly different versions of telephone conversations between Rick Lovelady and George Chapman, conversations that led to the parties' agreement and eventually to the present suit. Because we here review a summary judgment granted on Chapman's motion, we must take as true all evidence favorable to the nonmovant, RLCI, and indulge every reasonable inference and resolve any doubts in RLCI's favor. *Kachina Pipeline Co. v. Lillis,* 471 S.W.3d 445, 449 (Tex. 2015); *State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in U.S. Currency,* 390 S.W.3d 289, 292 (Tex. 2013). For our purpose, therefore, we accept RLCI's version of the telephone conversations.

---

[2] According to the summary judgment evidence, Rick Lovelady and his wife are the sole shareholders of RLCI, and the corporation is "controlled" by Rick Lovelady as its president. Rick Lovelady was the initial plaintiff; RLCI later intervened. The trial court granted Chapman summary judgment on all claims brought by Rick Lovelady, and Mr. Lovelady has not appealed that judgment.

Lovelady's deposition testimony describes the initial December 2007 conversation like this: "Mr. Chapman called me on the phone one day and had mentioned to me that the lot next door might be for sale and wanted to know if I would be interested in being a partner with him on the deal." He continued, "He called and asked me if I'd be interested in being a partner over there on the lot next door to me. The purchase price was 400,000, and we're going to split it 200 a piece, 50/50 partners."

The lot to which Chapman was referring was a vacant lot fronting on the Interstate 40 service road, adjacent to RLCI's Amarillo carpet store. In an affidavit, Lovelady indicated Chapman also referred to the $400,000 price as "very favorable." Lovelady asked for time to think about the prospect.

Chapman called Lovelady back about a week later and this time Lovelady expressed interest in the proposal. When Chapman again called Lovelady in January 2008, Lovelady's evidence shows, "Chapman said that he had already purchased the property for $400,000, but he reiterated that he would 'let me in for half of the property for $200,000.'" Lovelady agreed to the proposal. According to Lovelady he "decided to have [his] corporation [RLCI] make the investment with Chapman."

Chapman and RLCI created a new entity, I-40 Development, LLC, to own the lot. Each had a 50% interest in the company; Chapman had primary responsibility for managing its financial affairs and maintaining the books and records. For its interest, RLCI contributed $200,000 cash. Chapman contributed an undivided half interest in the lot for its 50% interest; the LLC then purchased the remaining undivided interest in the

lot from Chapman for RLCI's contributed $200,000. The LLC was formed, and its acquisition of the lot was consummated, in mid-January 2008.

During an early 2013 conversation with Lovelady, George Chapman's son Justin told Lovelady that he did not believe his father paid $400,000 for the lot. Lovelady immediately confronted Chapman with this information. Chapman vehemently denied the assertion and again represented the purchase price was $400,000. Lovelady asked to see, and Chapman agreed to show him, the closing documents for his purchase.

The documents were not provided and over the ensuing weeks Lovelady made at least three requests of Chapman for the documents. Each time Chapman represented that he paid $400,000 for the lot and would provide the supporting documentation.

When the documentation was not provided, Lovelady retained counsel who contacted the entity that sold Chapman the lot. It refused to disclose the sale information. Lovelady contacted the title company that handled the closing, but it refused to provide sale documentation without Chapman's approval.

In March 2013, Chapman told Lovelady that Lovelady did not need to see the closing documents. Lovelady filed suit in May 2013. Through third-party discovery, Lovelady's counsel obtained copies of the title company's closing documents. This record indicated Chapman bought the lot in December 2007 for $174,319.[3]

---

[3] In the motion for summary judgment Chapman stated he "strongly denie[d] telling Lovelady anything about what he paid for the [lot]." In his deposition, Chapman was asked how he arrived at the $200,000 asking price for a half-interest in the lot. He responded that Lovelady "asked me what I wanted for it, and I said I'll take 200 for half

4

In its live petition, RLCI alleged claims against Chapman for common-law and statutory fraud,[4] fraudulent inducement, breach of fiduciary duty, breach of contract and unjust enrichment and an action for an accounting. It requested imposition of a constructive trust on the lot, an award of compensatory and exemplary damages, and recovery of attorney's fees. To suspend or toll the statutory limitations periods, RLCI alleged the discovery rule and fraudulent concealment.

Chapman filed a hybrid motion for summary judgment challenging RLCI's entire case on traditional and no-evidence grounds. The trial court granted Chapman's motion without specifying a ground for its ruling and rendered a take-nothing judgment in Chapman's favor.

Analysis

Through multiple issues RLCI contends the trial court erred in rendering summary judgment for Chapman.

---

of it. I didn't think that was out of line. Not at all. The economy was good. We were selling stuff up there. That was good back then." The record indicates there were no witnesses to the parties' telephone conversations.

The conflicting testimony regarding the telephone conversations between the two men mirrors the parties' overall characterization of their transaction. Chapman characterizes Lovelady's "storyline underlying this suit" as "at best, incredulous." He asserts RLCI's fraud claim is built "around a set of contrived and implausible 'facts.'" RLCI casts the case as a "brazen hustle," a "simple scam."

[4] TEX. BUS. & COM. CODE ANN. § 27.01 (West 2015) (fraud in real estate and stock transactions).

5

Standard and Scope of Review

We review the trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex. 2003). When the trial court does not specify the ground for its ruling, the summary judgment must be affirmed if any ground on which judgment was sought has merit. *Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in U.S. Currency,* 390 S.W.3d at 292.

To be entitled to a summary judgment on a traditional motion, a defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex. 1997). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson,* 168 S.W.3d 802, 816 (Tex. 2005). When summary judgment is sought on a traditional motion, the burden of proof does not shift to the nonmovant unless the movant has conclusively established its entitlement to summary judgment. *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex. 1989). Should the movant prove entitlement to summary judgment, it is the nonmovant's burden to raise a genuine issue of material fact. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 23 (Tex. 2000).

We review a summary judgment granted on a no-evidence motion under the same legal sufficiency standard as a directed verdict. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 750 (Tex. 2003). In response to a no-evidence motion for summary judgment, it is the nonmovant's burden to present competent evidence raising a genuine issue of material fact as to each challenged element of its cause of action.

6

TEX. R. CIV. P. 166a(i); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206 (Tex. 2002).

Fraud and Fraudulent Inducement

> RLCI's brief begins with this succinct description of its central allegation:
>
> After paying $174,319 for a piece of land, Defendant George Chapman immediately lied to Rick Lovelady and convinced him that Chapman had paid $400,000. Lovelady Carpets was thereby induced to pay $200,000 for a one-half interest in the land and to join a new partnership[5] controlled by Chapman.

From that description, RLCI proceeds to a discussion why the trial court erred by granting Chapman's summary judgment motion on RLCI's fraud and fraudulent inducement claims. Against the fraud claim, Chapman's motion asserted RLCI had no evidence of its justifiable reliance or damages. The parties have devoted most of their briefing to these issues, and to the related limitations issues.

"A common-law fraud claim requires a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury. . . . Fraudulent inducement is a distinct category of common-law fraud that shares the same elements but involves a promise of future performance made with no intention of performing at the time it was made." *Zorrilla v. Aypco Constr. II, LLC,* 469 S.W.3d 143, 153 (Tex. 2015) (internal quotation marks and citations omitted). "Fraudulent inducement . . . is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof.

---

[5] It is clear that the brief actually is referring to I-40 Development, LLC.

That is, with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties." *Haase v. Glazner,* 62 S.W.3d 795, 798-99 (Tex. 2001).

*Justifiable Reliance*

To establish fraudulent inducement, the plaintiff must show that it entered into a contract. *Haase*, 62 S.W.3d at 798 ("[w]ithout a binding agreement, there is no detrimental reliance, and thus no fraudulent inducement claim"). To determine the justifiability of the plaintiff's reliance on the representation, courts look to whether "given a fraud plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud[,] it is extremely unlikely that there is actual reliance on the plaintiff's part." *Grant Thornton LLP v. Prospect High Income Fund,* 314 S.W.3d 913, 923 (Tex. 2010). A person may not justifiably rely on a representation in the face of "red flags" indicating reliance is unwarranted. *Id.*

Chapman's contentions on this point focus on Lovelady's business experience and general familiarity with the values of properties in the area of his place of business along I-40. In his deposition, for example, Lovelady agreed he had "some idea" of "what property was buying and selling for" in that area. Based on such statements, Chapman posits that RLCI has no evidence that any representation on his part changed Lovelady's opinions of the value of the lot. But as RLCI emphasizes, its claims focus not on the value of the lot but on Chapman's representation that RLCI would pay for its half interest half of Chapman's purchase price for the lot. Considering the "extremely unlikely" standard applicable to the issue, and the requirement that we accept RLCI's

8

summary judgment evidence in our review, we find the evidence raises an issue of fact as to RLCI's justifiable reliance on Chapman's representation.[6]  Chapman's assertions that red flags precluded justifiable reliance do not demonstrate otherwise.

*Damages*

Chapman contends RLCI has no evidence of damage caused by its reliance on a false representation of Chapman's purchase price.

Generally, the measure of damages in a fraud case is the actual amount of the plaintiff's loss directly or proximately resulting from the defendant's fraudulent conduct. *Tilton v. Marshall,* 925 S.W.2d 672, 680 (Tex. 1996) (orig. proceeding) (op. on reh'g). For its damages theory, RLCI relies primarily on this Court's early opinion in *Garrison v. Bowman*, 183 S.W. 70 (Tex. Civ. App.—Amarillo 1916, no writ) and cases of similar holdings.[7]  *Garrison* cites a rule "that when representations as to the cost of property

---

[6] On rehearing, Chapman contends our conclusion is precluded by case law holding that a party to a written contract cannot justifiably rely on an oral misrepresentation inconsistent with the contract's unambiguous terms.  *See, e.g., Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424 (Tex. 2015) (per curiam). Chapman points to the provisions of the parties' LLC agreement that define the members' capital accounts in terms of the fair market value of their contributions, and the agreement's exhibit showing Chapman's initial capital contribution of $200,000 in real estate and RLCI's of $200,000 in cash. RLCI responds that the capital account provisions are not inconsistent with George Chapman's representation of his purchase price.  We agree that had the purchase price been $400,000, as Rick Lovelady says was represented, no inconsistency appears between the representation and the LLC agreement's assumption that each member contributed property with a fair market value of $200,000.  The asserted representation in *Westergren*, 453 S.W.3d at 424-25, by contrast, was directly contrary to the terms of the release Mr. Westergren signed without reading.

[7] *Pickett v. Wren,* 174 S.W. 156, 158 (Mo. Ct. App. 1915) ("The rule is of general acceptation that, where a vendor agrees to sell property, or an interest therein, at what it cost him, and fraudulently misrepresents the cost, the measure of the purchaser's

9

are made by a person purchasing jointly for himself and another, or by a person turning property already acquired over to an association, of which he is a member, such representations are statements of fact, which may be properly relied upon, and, if false, will support an action for fraud." *Id.* at 73. We went on to find, under the facts of that case, the measure of the plaintiffs' damages should be the difference between the price paid by the plaintiffs, based on the defendant's misrepresentation, and the defendant's actual purchase price. *Id.* We characterized this result as giving the plaintiffs the benefit of their contract. *Id.* (citing *Hall v. Grayson Cty. Nat'l Bank*, 81 S.W. 762 (Tex. Civ. App. 1904, no writ)).

Chapman responds by noting our state's courts' repeated statements that Texas recognizes two measures of direct damages for common law fraud: the out-of-pocket measure and the benefit-of-the-bargain measure. *See, e.g., Formosa Plastics Corp. United States v. Presidio Eng'rs & Contrs.,* 960 S.W.2d 41, 49 (Tex. 1998). The out-of-pocket measure computes the difference between the value paid and the value received, while the benefit-of-the-bargain measure computes the difference between the value as represented and the value received. *Id.; see Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 636 (Tex. 2007) (benefit-of-the-bargain damages derive from an "expectancy theory"). Benefit-of-the-bargain damages protect the injured party's

damages is generally the difference between the actual and the represented value") (citing *Pendergast v. Reed,* 29 Md. 398 (Md. 1868)); *Thompson v. Lyons,* 220 S.W. 942, 949 (Mo. 1920) ("The measure of damages for misrepresentations inducing the purchase of land, or other property, depends upon the nature of the misrepresentations. . . . [W]here one person makes a purchase for another, or where one of two or more joint purchasers conducts a joint purchase, and falsely represents to the others that the price is greater than is actually paid for the property, the measure of damages is always the difference between the amount actually paid by the party defrauded and the true purchase price of the interest which he acquired" (citing *Pickett,* 174 S.W. 156)); *Johnson v. Gavitt,* 114 Iowa 183, 184-85, 86 N.W. 256 (1901) (similar analysis).

expectation interest by placing it in the same position it would have occupied had no misrepresentation occurred. *See Bechtel Corp. v. CITGO Prods. Pipeline Co.,* 271 S.W.3d 898, 927 (Tex. App.—Austin 2008, no pet.) (contract damages).

Chapman contends that without evidence the value of the half-interest in the lot was less than $200,000,[8] RLCI has no evidence to satisfy the benefit-of-the-bargain measure. We are not persuaded that the "value as represented vs. value received" formulation is so rigid as to preclude RLCI's proper reliance on this Court's holding in *Garrison. See* 11-55 Joseph M. Perillo, CORBIN ON CONTRACTS § 55.13 (Matthew Bender, Lexis 2016) (discussing "What is Meant by 'Value'" and commenting "[t]he valuation of a promised performance is far from a simple matter, both because the concept of value is itself variable and because the performances that may be promised are capable of endless variety"); RESTATEMENT (SECOND) OF TORTS § 549 (1977) (outlining measure of damages for fraudulent misrepresentation); *Pendergast,* 29 Md. at 405 (measure of damages for false representation by seller of "cost price" of boat); *Hinkle v. Rockville Motor Co.*, 262 Md. 502, 278 A.2d 42, 44 (1971) (characterizing the rule discussed in *Pendergast* as a "'benefit of bargain'" formula). We agree with RLCI that neither *Formosa Plastics* nor the cases on which it relied preclude application of the benefit-of-the-bargain measure to fact patterns like that reflected in *Garrison*.[9] Finally,

_____

[8] We note that RLCI's response to Chapman's summary judgment motion contains a paragraph asserting that Chapman's actual December 2007 purchase price of $174,319 for the entire lot, as reflected in the summary judgment record, is some evidence of a market value less than the $200,000 it paid for its half interest. Chapman contends RLCI waived any contention that it suffered injury based on the value of the property it purchased. We need not address that assertion.

[9] In its discussion of the benefit-of-the-bargain measure of damages for common-law fraud, the court in *Formosa Plastics*, 960 S.W.2d at 49, cited *Arthur Andersen & Co.*

11

we agree that Lovelady's version of Chapman's representations to him is such as to bring it within the rule outlined in *Garrison*. Chapman points out we stated in *Garrison* that a confidential relationship existed between the plaintiffs and defendant. 183 S.W. at 73. We agree with RLCI, however, that the relationship of the parties in that case had no bearing on the measure of damages from the misrepresentation. For those reasons, we will sustain RLCI's contention that the record contains some evidence of recoverable damages for fraud.

The Statute of Limitations

The statute of limitations is an affirmative defense on which Chapman relied and, as traditional summary-judgment movant, bore the burden of conclusively proving when RLCI's causes of action accrued. *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex. 1999). A claim for fraud must be brought no "later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE ANN. § 16.04(a)(5) (West 2002). A cause of action for fraud does not accrue until it is discovered or could have been discovered through the exercise of reasonable diligence. *Computer Associates Intern. v. Altai,* 918 S.W.2d 453, 455-56 (Tex. 1994) ("limitations begin to run from the time the fraud is discovered or could have been discovered by the defrauded party by exercise of reasonable diligence" (internal quotation marks omitted)). The same accrual-date rule applies if a party claims it was fraudulently induced into a contract. *Hooks v. Samson Lone Star, Ltd. P'ship,* 457 S.W.3d 52, 57 (Tex. 2015) ("Fraudulent inducement is a subspecies of fraud . . . . [L]imitations does

*v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex. 1997); *W.O. Bankston Nissan, Inc. v. Walters*, 754 S.W.2d 127, 128 (Tex. 1988); and *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 373 (Tex. 1984).

not start to run until the fraud with respect to the contract is discovered or the exercise of reasonable diligence would discover it").

Reasonable diligence is an issue of fact, but in some circumstances a court can determine the issue as a matter of law. *Hooks,* 457 S.W.3d at 57-58. In a discussion of the discovery rule, Chapman's brief argues market value of property is not inherently undiscoverable. But RLCI claims Chapman misrepresented his purchase price, not the lot's market value. And elsewhere in his brief Chapman points to Lovelady's response to a question in his deposition asking if he exercised "any diligence in this transaction." Lovelady responded, "No, sir." We cannot consider the witness's response to so broad a question as conclusive proof of the date that RLCI's cause of action accrued. *KPMG Peat Marwick,* 988 S.W.2d at 748. In sum, on the record before us, and accepting as we must the truth of RLCI's summary judgment evidence, Chapman has not met his burden to establish the efficacy of his limitations defense as to the fraud and fraudulent inducement claims. Further discussion of the discovery rule or fraudulent concealment is unnecessary to our disposition of the appeal. TEX. R. APP. P. 47.1.

Additional Grounds for Summary Judgment

Chapman's motion for summary judgment asserted additional grounds challenging particular causes of action alleged by RLCI's pleadings. The parties have addressed those additional grounds in their briefing. Our original opinion did not address the additional no-evidence grounds, and Chapman's motion for rehearing argues our opinion does not address every issue raised and necessary to final

disposition of the appeal.[10]  Chapman contends, "because summary judgment was granted on multiple grounds, the Court could not properly reverse the judgment without conducting an appropriate review of each ground on which judgment was granted."

We have again reviewed the grounds for summary judgment asserted in Chapman's motion[11] and the issues raised on appeal.  The trial court did not state the grounds on which it granted summary judgment.  By our original opinion and this opinion on rehearing, we have addressed each of Chapman's summary judgment grounds that, as we view them, could support the trial court's take-nothing judgment on RLCI's entire case.  "A summary judgment for the defendant disposing of the entire case is proper only if, as a matter of law, the plaintiff could not succeed on any theories pleaded."  6 Roy W. McDonald & Elaine A. Grafton Carlson, TEXAS CIVIL PRACTICE § 28:21, at 1068 (2d ed. rev. 2014); *Butcher v. Scott,* 906 S.W.2d 14, 15 (Tex. 1995) (per curiam).

Chapman cites the opinion in *Sloan v. Law Office of Oscar C. Gonzales, Inc.,* 479 S.W.3d 833 (Tex. 2016) (per curiam), which involved the appeal of a judgment following a jury trial. Rule 47.1 required the court of appeals to address the jury's joint-enterprise and joint venture findings in that appeal because they determined the amount of damages properly assignable by the judgment the court of appeals rendered.  *Id.* at

---

[10] Appellate rule 47.1 provides, "The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."  TEX. R. APP. P. 47.1.

[11] *Cf. Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 5 (Tex. 1999) (appellate court must review all summary judgment grounds on which trial court actually ruled, whether granted or denied, *and which are dispositive of the appeal*, and may consider grounds on which trial court did not rule) (emphasis ours) (citing *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623 (Tex. 1996)).

834-35. In the case before us, as the result of our review of the grounds supporting the trial court's take-nothing judgment, it must be reversed and the cause remanded. Unlike in *Sloan*, no review we would undertake of the additional issues Chapman asserts on appeal would alter our disposition. *See Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in U.S. Currency,* 390 S.W.3d at 294 (rules of appellate procedure "provide for courts of appeals to hand down opinions that are as brief as practicable while covering every issue raised and necessary to disposition of the appeal").

## Conclusion

As discussed, after review of the summary judgment record, we find it presents genuine issues of material fact incapable of resolution as a matter of law. TEX. R. CIV. P. 166a(c). Accordingly, we must sustain RLCI's challenge of the take-nothing summary judgment. We reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion. TEX. R. APP. P. 43.2(d).

James T. Campbell
Justice

15